*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

SHERONDA STANLEY,

        Plaintiff-Appellee,

and

AFFILIATED DIAGNOSTIC OF OAKLAND, LLC,

        Intervening Plaintiff,

v

CITY OF DETROIT, MICHIGAN AUTOMOBILE
INSURANCE PLACEMENT FACILITY, and
BENITA PICKENS,

        Defendants,

and

NATIONAL INTERSTATE INSURANCE
COMPANY OF HAWAII,

        Defendant/Third-Party Defendant,

and

EXECUTIVE CAR RENTAL, INC.,

        Defendant-Appellant,

and

FARMERS INSURANCE EXCHANGE,

        Defendant/Third-Party Plaintiff,

and

USAA CASUALTY INSURANCE COMPANY,

FOR PUBLICATION
May 25, 2023
9:05 a.m.

No. 361266
Wayne Circuit Court
LC No. 20-001318-NI

Defendant-Appellee.

_____

SHERONDA STANLEY,

       Plaintiff-Appellee,

and

AFFILIATED DIAGNOSTIC OF OAKLAND, LLC,

       Intervening Plaintiff,

_____

v

       No.     361956
       Wayne Circuit Court

CITY OF DETROIT, MICHIGAN AUTOMOBILE
INSURANCE PLACEMENT FACILITY, EXECUTIVE CAR RENTAL, INC., and BENITA PICKENS,

       LC No.   20-001318-NI

_____

       Defendants,

and

NATIONAL INTERSTATE INSURANCE
COMPANY OF HAWAII,

       Defendant/Third-Party Defendant-
       Appellant,

and

FARMERS INSURANCE EXCHANGE,

       Defendant/Third-Party Plaintiff-
       Appellee,

and

USAA CASUALTY INSURANCE COMPANY,

       Defendant-Appellee.

_____

Before: CAMERON, P.J., and JANSEN and BORRELLO, JJ.

PER CURIAM.

In Docket No. 361266, defendant Executive Car Rental, Inc. (Executive), appeals by leave granted[1] the April 14, 2022 trial court order to the extent that it denies Executive's motion for summary disposition in this no-fault action filed by plaintiff, Sheronda Stanley. In Docket No. 361956, defendant/third-party defendant National Interstate Insurance Company of Hawaii (National) appeals by leave granted[2] the same order to the extent that it denies National's motion for summary disposition, and declares National liable for reimbursement of no-fault benefits. These cases were consolidated by order of this Court. We reverse and remand for further proceedings consistent with this opinion.[3]

## I. FACTUAL BACKGROUND

This case arises from an automobile accident that occurred on May 24, 2019, on Seven Mile in Detroit. On that date, Jeanette Johnson, plaintiff's sister, was driving a Dodge Journey she had rented from Executive. Plaintiff was a passenger in the vehicle. Plaintiff had no no-fault insurance policy of her own, nor was she a household member of Johnson, who was insured by defendant USAA Casualty Insurance Company (USAA). As Johnson was driving, a City of Detroit water and sewage van driven by defendant Benita Pickens collided with the Dodge Journey. As a result of the accident, plaintiff suffered injuries in her right knee and lower back, as well as headaches.

Plaintiff's counsel's office tried to contact and make a claim with Executive several times in November and December 2019. Heather Moffat, a representative from Executive, informed Jeri Churchill, a paralegal from plaintiff's counsel's office, that Executive's insurance usually did not cover passengers or drivers—they were usually covered by their own insurance. Moffat provided Churchill with an e-mail address to make a claim, but plaintiff's counsel was unable to reach anyone from Executive throughout January 2020.

## II. PROCEDURAL HISTORY

Plaintiff filed suit on January 28, 2020, alleging the following six counts: (I) operator negligence against Pickens, (II) owner negligence against the City of Detroit, (III) a no-fault claim against USAA under the no-fault act, MCL 500.3101 *et seq.*, (IV) a no-fault claim against Executive, (V) a no-fault claim against defendant Michigan Automobile Insurance Placement Facility (MAIPF), and (VI) an uninsured motorist benefits claim against USAA. In relation to both USAA and Executive, plaintiff alleged that "[a]s a provision of the policy of insurance issued by" USAA or Executive, she was entitled to PIP benefits. She alleged that Executive "executed

---

[1] *Stanley v Pickens*, unpublished order of the Court of Appeals, entered August 12, 2022 (Docket No. 361266).

[2] *Stanley v Pickens*, unpublished order of the Court of Appeals, entered August 12, 2022 (Docket No. 361956).

[3] Intervening plaintiff Affiliated Diagnostic of Oakland, LLC, and defendants City of Detroit, Benita Pickens, and the Michigan Automobile Insurance Placement Facility (MAIPF) were dismissed from suit in the lower court and have not participated in this appeal. As such, they will not be discussed in detail herein.

and delivered" to plaintiff a Michigan no-fault endorsement that became part of the policy. When plaintiff sought payment from USAA and Executive, both refused to pay. Plaintiff filed a claim for benefits with the MAIPF, but as of filing the complaint, it had not yet assigned plaintiff's claim to an insurer.

A proof of service indicates that Executive was served with the summons and complaint on January 31, 2020. On March 2, 2020, plaintiff requested that a default be entered against Executive for failure to plead or otherwise defend. The court clerk entered the default on March 3, 2020, and it was served on Executive on March 4, 2020.

In April 2020, Moffat emailed Churchill to see if anything else was needed from Executive, and Moffat responded, "We need you guys to answer the complaint." Moffat asked for a copy, saying she "saw it in their paperwork," but her scanner was not working, so Churchill sent her a courtesy copy she could forward to Executive's attorney.

In March 2021, the court entered a stipulated order substituting defendant/third-party plaintiff Farmers Insurance Exchange (Farmers) for the MAIPF because the MAIPF assigned plaintiff's claim to Farmers. Thus, the MAIPF was dismissed from suit. Shortly thereafter, when Executive responded to a discovery request by Farmers, it was discovered that Executive had an insurance policy through National for its fleet of rental vehicles that covered the Dodge Journey on the date of the accident. Thus, the court entered an order allowing Farmers to file a third-party complaint against National, and allowing plaintiff to file an amended complaint to name National as a defendant. Plaintiff filed an amended complaint alleging: (I) a no-fault claim against USAA, (II) a no-fault claim against Executive, (III) a no-fault claim against Farmers as the assigned insurer by the MAIPF, (IV) a no-fault claim against National, and (VI) an uninsured motorist benefits claim against USAA. Farmers filed a third-party complaint against National, asserting that National was the highest-priority insurer, and that Farmers could seek reimbursement from National for any PIP benefits it paid to plaintiff under MCL 500.3175.

In June 2021, plaintiff moved for default judgment against Executive for no-fault benefits in the amount of $191,611.94. Plaintiff asserted that it served Executive with the complaint by certified mail, Executive failed to answer so default was entered, and plaintiff was still seeking payment for benefits. The court entered the judgment in the full amount. Executive moved to set aside the default judgment, arguing that it did not receive proper service of the summons and complaint, and it had a meritorious defense to plaintiff's claim because it was insured by National at the time of the accident. The trial court denied the motion, and Executive moved for reconsideration. Executive argued that good cause existed to set aside the default judgment because it was never personally served with the complaint as required by MCR 2.105, and that plaintiff's claim had no basis in law because it treated Executive as an insurer, which it is not. The court granted Executive's motion for reconsideration, and set aside the default judgment. It reasoned that Executive had a meritorious defense to plaintiff's claim because it was not an insurer, and it was not personally served with the summons and complaint as required under MCR 2.105(D).

Each of the insurers ultimately moved for summary disposition disputing the order of priority. National argued it was not given notice of plaintiff's accident within one year of her injury, nor did it pay plaintiff any PIP benefits, so plaintiff's claims were time-barred against

National under MCL 500.3145(1) under the one-year statute of limitations. Farmers argued that it was last in priority as the MAIPF-assigned servicing insurer, and that MCL 500.3114(4) governed that National was first in priority as the insurer of the owner of the vehicle, followed by USAA as the insurer of the operator of the vehicle (Johnson). Farmers moved for countersummary disposition against National on its statutory reimbursement claim. USAA argued that National was first in priority under MCL 500.3114(4), and it could not shift responsibility to a lower-priority insurer where plaintiff failed to comply with a condition precedent to receive coverage (i.e., giving National notice of the claim within one year of the accident). Executive argued that it was entitled to summary disposition because Executive was not an insurer, and therefore, plaintiff's claim had no basis in law. Executive also moved for countersummary disposition against Farmers, arguing that it should have paid plaintiff's benefits while this dispute ensued, and then sought reimbursement from National. Plaintiff also moved for countersummary disposition against Farmers, making the same argument.

The court held a hearing on all of these motions and concluded that although coverage disputes remain unresolved, Farmers, as the assigned-claims carrier, was obligated to pay plaintiff's benefits. Because National may not have been timely notified, liability would shift to USAA or Farmers, who could seek reimbursement from National. It concluded that USAA was in the order of priority, but it was not first, and should not have paid plaintiff any benefits. Thus, the court entered an order granting USAA's motion for summary disposition on April 6, 2022, and entered an order on April 14, 2022, which (1) denied Executive's motion, (2) denied National's motion, (3) denied plaintiff's countermotion, (4) denied Farmer's motion in part, and (5) granted Farmer's countermotion for declaratory relief, stating that Farmers was entitled to reimbursement from National under MCL 500.3172.

National moved for reconsideration of both orders, arguing that under *Griffin v Trumbull Ins Co*, 334 Mich App 1; 964 NW2d 63 (2020), rev'd in part 509 Mich 484 (2022), plaintiff lacked due diligence to identify National as the priority insurer, so she was precluded from seeking benefits from National or Farmers, and USAA was next in priority. The court denied reconsideration. National and Executive now appeal.

III. DOCKET NO. 361266—EXECUTIVE'S APPEAL

Executive argues that it was entitled to summary disposition because (1) it is not an insurer, and therefore plaintiff failed to state a valid claim; (2) MCL 500.3177 did not apply and was not pleaded against Executive; and (3) the elements for a misrepresentation claim were not met, nor was a misrepresentation claim pleaded.

Executive moved for summary disposition under MCR 2.116(C)(8) and (10). This Court reviews a trial court's decision on a motion for summary disposition de novo. *Bauserman v Unemployment Ins Agency*, 509 Mich 673, 686; 983 NW2d 855 (2022). Executive argues that plaintiff failed to state a claim against it. "A motion under MCR 2.116(C)(8) tests the *legal sufficiency* of a claim based on the factual allegations in the complaint." *Id*. (quotation marks and citation omitted). All factual allegations alleged in the complaint are accepted as true. *Id*.

A party is entitled to summary disposition under MCR 2.116(C)(10) if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a

matter of law." "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *George v Allstate Ins Co*, 329 Mich App 448, 455; 942 NW2d 628 (2019). (quotation marks and citation omitted). When reviewing a motion for summary disposition filed under MCR 2.116(C)(10), "the trial court must consider the pleadings, affidavits, depositions, admissions and other documentary evidence submitted in the light most favorable to the nonmoving party." *Id*. "All reasonable inferences must be drawn in favor of the nonmoving party." *Id*.

First, Executive argues that it was entitled to summary disposition because the only claim pleaded against it treated Executive as an insurer, which Executive is not, and which plaintiff conceded. The initial complaint alleged:

> 32. As a provision of the policy of insurance issued by Defendant Executive[,] Plaintiff became entitled to receive various benefits pursuant to the Michigan No-Fault Law.
>
> 33. Defendant Executive executed and delivered to Plaintiff[] a certain "Michigan Personal Injury Protection Endorsement", among others, which endorsement became part of the policy and provided benefits in accordance to Chapter 31 of the Michigan Insurance Code, more commonly known as the Michigan No-Fault Insurance Law.
>
> 34. Plaintiff made a claim with Defendant Executive and that under such insurance policy, Defendant Executive is liable to pay over to Plaintiff certain benefits as set forth in the aforementioned statute.

Through discovery it was learned that Executive had an insurance policy issued by National. Thus, the court allowed plaintiff to file an amended complaint. Plaintiff's amended complaint, however, included the same language as the original complaint in another "no-fault claim" against Executive. When the trial court set aside the default judgment entered against Executive, it reasoned that Executive had a meritorious defense to plaintiff's claim that Executive executed and delivered to plaintiff a PIP endorsement because Executive is not an insurer. Plaintiff conceded in its combined response to the motions for summary disposition that "Executive is not an insurance company and will likely be dismissed from this lawsuit."

The trial court, however, denied Executive summary disposition under MCR 2.116(C)(10), reasoning that a question of fact existed whether Executive misrepresented the availability of coverage to plaintiff, which caused a delay of presentation of the claim to National. Indeed, Moffat told Churchill in e-mail correspondence that Executive's insurance did not cover drivers or passengers. The court reasoned that Executive was in the business of renting cars, and had the obligation to provide information on the availability of coverage to plaintiff so she could have pursued no-fault benefits in the proper order of priority in effect at the time of the accident. To the extent that Executive intentionally or negligently misrepresented the presence of coverage, the priority dispute arose. The trial court determined that Executive could be held responsible for some of the losses, questions of fact existed, and therefore summary disposition in favor of Executive was premature.

The trial court erred in denying Executive summary disposition under MCR 2.116(C)(10). Executive also moved for summary disposition under MCR 2.116(C)(8) and, as explained above, it is undisputed that Executive is not an insurer. Plaintiff concedes this fact. We note our concern, and that of the insurer-parties, that this result may incentivize rental car companies to delay notice to their insurance providers past the applicable time period in order to defer liability. However, plaintiff was given the opportunity to amend the complaint after National was identified as Executive's insurer, and still asserted a no-fault claim against Executive. But because Executive is not an insurer, it cannot be liable for no-fault benefits and plaintiff's complaint, even as amended, was facially defective. Under these circumstances, the trial court erred in denying Executive summary disposition, and Executive is entitled to summary disposition under MCR 2.116(C)(8).

Lastly, Executive argues that the trial court erred in denying it summary disposition based on the unpleaded theory that MCL 500.3177 applies. The version of the statute in effect at the time of plaintiff's accident[4] provided:

> (1) An insurer obligated to pay personal protection insurance benefits for accidental bodily injury to a person arising out of the ownership, maintenance, or use of an uninsured motor vehicle as a motor vehicle may recover such benefits paid and appropriate loss adjustment costs incurred from the owner or registrant of the uninsured motor vehicle or from his or her estate. . . . An uninsured motor vehicle for the purpose of this section is a motor vehicle with respect to which security as required by sections 3101 and 3102 is not in effect at the time of the accident. [MCL 500.3177(1).]

Both USAA and Farmers asserted in their responses to Executive's motion for summary disposition that MCL 500.3177 would apply. Executive is correct that no claim under this statute was ever directly filed against it. However, Executive is incorrect in asserting that the trial court relied on the statute in denying its motion for summary disposition. The trial court did not mention this statute from the bench when it rendered its decision.

Farmers and USAA argued in the trial court that the Dodge Journey was rendered effectively uninsured by Executive's failure to notify National of plaintiff's claim within a year of the accident. However, the statute clearly defines the term "uninsured" as a vehicle without insurance "in effect at the time of the accident." *Id*. There is no dispute that Executive had an insurance policy through National that covered the rented Dodge Journey at the time of the accident. Thus, the definition of "uninsured" in MCL 500.3177(1) is not met, and the statute would not apply.

IV. DOCKET NO. 361956—NATIONAL'S APPEAL

National argues that the trial court erred in holding that plaintiff could recover PIP benefits from Farmers where the MAIPF had no duty to assign plaintiff's claim under MCL 500.3172, and

---

[4] Because plaintiff's accident took place on May 24, 2019, the prereform version of the no-fault act applies.

that Farmers could then seek reimbursement from National. We agree. Plaintiff failed to exercise due diligence in identifying the highest-priority insurer, and therefore, she is not entitled to PIP benefits.

National argued that the trial court erred by concluding that Farmers was liable for plaintiff's PIP benefits, and that Farmers could seek reimbursement from National, in its motion for reconsideration of the order regarding all of the motions for summary disposition. An issue raised for the first time in a motion for reconsideration is not preserved on appeal. *George*, 329 Mich App at 454. However, the Court may overlook preservation requirements in civil cases "if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented." *Id*. (quotation marks and citation omitted). Here, the trial court raised the issue of liability sua sponte during the motion hearing. Thus, it makes sense that National did not address this issue before that hearing, and this Court may properly consider this issue. National's motion for summary disposition is also reviewed de novo, under the standard of review provided above for MCR 2.116(C)(10). See *id*. at 455.

This accident occurred on May 24, 2019. Thus, the prereform version of the no-fault act applies to this case. The version of MCL 500.3172(1) in effect at the time of the accident provided the circumstances in which the MAIPF must assign a claim:

> (1) A person entitled to claim because of accidental bodily injury arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle in this state may obtain personal protection insurance benefits through the assigned claims plan if [(a)] no personal protection insurance is applicable to the injury, [(b)] no personal protection insurance applicable to the injury can be identified, [(c)] the personal protection insurance applicable to the injury cannot be ascertained because of a dispute between 2 or more automobile insurers concerning their obligation to provide coverage or the equitable distribution of the loss, or [(d)] the only identifiable personal protection insurance applicable to the injury is, because of financial inability of 1 or more insurers to fulfil their obligations, inadequate to provide benefits up to the maximum prescribed. . . .[5]

Here, subsection (a) would not require assignment of the claim by the MAIPF because there was at least one PIP policy applicable. Similarly, subsection (d) of MCL 500.3172(1) does not apply because no insurer claims a financial inability to pay. Regarding subsections (b) and (c), the version of MCL 500.3114(4) applicable at the time of the accident provided:

> (4) Except as provided in subsections (1) to (3), a person suffering accidental bodily injury arising from a motor vehicle accident while an occupant of

---

[5] In the current version of MCL 500.3172(1), the four circumstances in which the MAIPF must assign a claim are designated as subsections (a) through (d), which are included in the quotation above and herein for clarity.

a motor vehicle shall claim personal protection insurance benefits from insurers in the following order of priority:

> (a) The insurer of the owner or registrant of the vehicle occupied.

> (b) The insurer of the operator of the vehicle occupied.

Because plaintiff did not have an insurance policy of her own, MCL 500.3114(4) applied. Thus, National or USAA were potentially liable for paying plaintiff's PIP benefits as insurer of the owner of the car (National) or the insurer of the operator of the car (USAA).

National argues that subsection (b) does not apply because USAA was identified, and National could have been, and that subsection (c) does not apply because there is no true priority dispute between USAA and National—they each have an independent defense. National relies on this Court's decision in *Griffin*, 334 Mich App 1, which was reversed in part by the Supreme Court, 509 Mich 484.[6] The Supreme Court decision is now binding precedent. See *Ahmed v Tokio Marine America Ins Co*, 337 Mich App 1, 22; 972 NW2d 860 (2021) (This Court is "bound to follow decisions by [the Supreme] Court except where those decisions have clearly been overruled or superseded . . .").

The plaintiff in *Griffin* swerved his motorcycle to avoid collision with a truck, his motorcycle went down, and he was badly injured. *Griffin*, 509 Mich at 491. The truck driver stopped and spoke to police, and his name, telephone number, and home address were included in the crash report, but the license plate or VIN number of the truck, nor the owner or insurer of the truck, were included. *Id*. The plaintiff hired an attorney, who sent the truck driver a letter to his home address, and advised the truck driver to turn the letter over to his insurer. *Id*. at 491-492. The truck driver did not respond. *Id*. at 492. The plaintiff was insured by Trumbull Insurance Company, and he filed a PIP claim. *Id*. Trumbull made several unsuccessful attempts to contact the truck driver. *Id*. When the plaintiff's attorney later contacted Trumbull for an update on the plaintiff's claim, Trumbull did not respond, and in fact, had closed its investigation. *Id*. at 492-493. So the plaintiff submitted claims to the MAIPF, who refused to assign the claim, and to other lower-priority insurers. *Id*. at 493. The plaintiff's attorney hired an investigation company, but no insurance information was found for the truck driver or truck. *Id*. Thus, 11 months after the accident, the plaintiff filed suit against Trumbull, the Michigan Assigned Claims Plan (MACP), the lower-priority insurers, and John Doe Insurance Company. *Id*. More than a year after the accident, Trumbull formally denied the plaintiff's claim. *Id*.

During discovery, Trumbull hired an investigator to locate the driver, who was found and deposed. *Id*. at 493-494. The truck he was driving was owned by his former employer and insured

---

[6] National first argued that plaintiff lacked due diligence to identify National as the priority insurer under *Griffin* in its motion for reconsideration of the order denying its motion for summary disposition. The trial court denied reconsideration, reasoning that National merely presented the same issues already ruled on and failed to demonstrate palpable error or that a different result would occur from correction of the alleged mistake. Thus, the trial court never made a finding whether plaintiff acted with due diligence.

by Harleysville Insurance. *Id*. at 494. He had submitted an accident report to his employer, who never reported it to Harleysville. *Id*. Based on this information, Trumbull moved for summary disposition, arguing it was not liable for PIP benefits because Harleysville was the highest-priority insurer; the MACP filed a similar motion. *Id*. The trial court agreed, holding that Harleysville was the highest-priority insurer, and the plaintiff did not exercise due diligence in attempting to timely locate Harleysville. *Id*. The court granted both motions. *Id*. This Court affirmed, relying on *Frierson v West American Ins Co*, 261 Mich App 732; 683 NW2d 695 (2004), for the general proposition that if a higher-priority insurer is identifiable, then the general rule that one must look to their own insurer does not apply. *Griffin*, 509 Mich at 494-495. Because Harleysville was identifiable, plaintiff could not obtain PIP benefits from Trumbull as Harleysville was a higher-priority insurer. *Id*. at 495.[7] The plaintiff sought leave to appeal in the Michigan Supreme Court, which scheduled oral argument and directed the parties to address:

> (1) whether a lower-priority insurer, who was provided timely notice under MCL 500.3145(1), can be held liable for personal protection insurance benefits under the no-fault act if the higher-priority insurer was not identified until after the one-year statutory notice period under MCL 500.3145(1) expired; if so, (2) whether the insured must prove that he or she exercised reasonable, due, or some other degree of, diligence in searching for the higher-priority insurer; and, if so, (3) whether the appellant exercised the requisite degree of diligence in searching for the higher-priority insurer. [*Id*. at 496, citing *Griffin v Trumbull Ins Co*, 507 Mich 941, 941-942; 958 NW2d 853 (2021).]

The Supreme Court reversed this Court's decision, holding that the plaintiff properly filed a claim against all insurers identifiable before the expiration of the limitations period, and that Trumbull's delay in deciding whether to pay or deny the plaintiff's claim until after the limitations period expired did not excuse it from liability. *Griffin*, 509 Mich at 491. The Supreme Court held that the trial court erred in granting Trumbull summary disposition, and this Court erred in affirming "on the basis that a previously *unidentifiable* higher-priority insurer *became identifiable* during litigation well after the one-year notice and limitations period in MCL 500.3145 had expired." *Id*.

The Court explained that MCL 500.3114, which establishes priority among insurers, places the burden on a claimant to claim PIP benefits from a list of potential insurers based on the priority scheme. *Id*. at 498-500. The claimant must put potential insurers on notice and submit a claim. *Id*. at 500. This implies that a claimant must be diligent in the pursuit of PIP benefits. *Id*. "Due diligence requires a good-faith effort to fulfill a legal obligation or requirement that could ordinarily be expected of a person under the factual circumstances." *Id*. Due diligence "must be more than a mere gesture, [but] it does not mean that one must exhaust everything that is theoretically or abstractly possible." *Id*. at 501. The Court stated that requiring a claimant to identify potential insurers and pursue a claim with due diligence is consistent with the purpose of

---

[7] Judge Ronayne Krause dissented, suggesting a due-diligence standard for determining whether a higher-priority insurer can be identified. *Id*. at 495, citing *Griffin*, 334 Mich App at 18 (RONAYNE KRAUSE, J., concurring in part and dissenting in part).

the no-fault act, and will be a fact-specific determination made on a case-by-case basis. *Id*. The Court analogized other statutory provisions that establish that "insurers who receive a claim for PIP benefits prior to expiration of the limitations period must act diligently when investigating, responding to, and resolving the claim, and the provisions provide a strong financial incentive to do so." *Id*. at 502.

Similarly, the Supreme Court affirmed the previous decisions of this Court holding that a dispute regarding which of multiple insurers is responsible for payment does not excuse delaying payment. *Id*. When the wrong insurer pays, there is a statutory right for recoupment, MCL 500.3114(6), and insurers have the right to sue for equitable subrogation. *Id*. Or, priority disputes may result in a claim submitted to the MACP being assigned by the MAIPF. *Id*., citing MCL 500.3172. Thus, the statutory scheme incentivizes insurers to pay first and seek reimbursement later, and penalizes unreasonable payment delays. *Griffin*, 509 Mich at 502-503. "Diligent and timely action by all parties is required; gamesmanship should not be rewarded." *Id*. at 503 n 7.

In applying the facts of the case, the *Griffin* Court noted that it was undisputed that the limitations period in MCL 500.3145(1) had run before Harleysville was identified, and that Harleysville was the highest-priority insurer under MCL 500.3114(5). *Id*. at 503. Thus, the question was whether the trial court erred by granting Trumbull summary disposition on that basis that it could not be liable for the plaintiff's PIP benefits because of the plaintiff's alleged lack of diligence in trying to identify Harleysville before the limitations period elapsed. *Id*. It concluded that summary disposition was granted in error, and the plaintiff acted diligently. *Id*. The plaintiff hired an attorney, who promptly sent the truck driver a letter, but the truck driver did not respond or forward it to his insurer. *Id*. at 504. So the plaintiff submitted a claim to Trumbull. *Id*. The Court admonished Trumbull for leaving "its insured in limbo for nearly a year under the guise of 'investigation' *while refusing to pay or deny the pending PIP benefits claim* and then pull the rug out after a lawsuit was filed and the limitations period in MCL 500.3145(1) had run." *Id*. at 509. The Court rejected this Court's interpretation of *Frierson*—that it created a "binary inquiry that only asks whether an insurer was potentially identifiable in the abstract." *Id*. at 506. However, the Court agreed with "*Frierson*'s implication that when it would be practically impossible for a party to learn the identity of the presumed highest-priority insurer, then an injured party should be able to look to another insurer in the order of priority, such as their default PIP insurer or, if that is not an option, the MACP." *Id*.

Applying *Griffin* to the facts at hand, we conclude that plaintiff failed to act with due diligence in trying to identify Executive's insurer. The accident occurred on May 24, 2019. Notes from plaintiff's attorney's office indicate that plaintiff's counsel left voicemails for Executive trying to open a claim on November 27, 2019. Churchill reached out to the claims department of Executive on December 3, 2019. Moffat responded that day, indicating that Executive's insurance usually does not cover passengers or drivers—that is usually covered by their own insurance. Moffat provided Churchill with an e-mail address to contact to make the claim. But three notes from January 2020 indicate that plaintiff's counsel reached out to Executive and was unable to reach anyone. Plaintiff filed suit on January 28, 2020. The default was entered against Executive on March 3, 2020. Then, in April 2020, Moffat emailed Churchill to see if anything else was needed, and Moffat responded, "We need you guys to answer the complaint." Moffat asked for a copy, saying she "saw it in their paperwork," but her scanner was not working, so Churchill sent her a courtesy copy she could forward to Executive's attorney. It was not until

April 2021, after MAIPF assigned plaintiff's claim to Farmers, and Farmers served Executive with a subpoena to produce its insurance policy, that it was discovered that Executive had an insurance policy issued by National that covered the Dodge Journey on the date of the accident. The top two insurers in the order of priority were therefore identified (USAA) and identifiable (National), and plaintiff's actions do not meet the due-diligence standard articulated under *Griffin*.

Moreover, under MCL 500.3114(4)(a), National would be the highest-priority insurer as the insurer of Executive, the owner of the vehicle. The trial court reached this conclusion in granting Farmers declaratory relief that it was entitled to statutory reimbursement from National under MCL 500.3172. However, under MCL 500.3145(1), an action for PIP benefits "may not be commenced later than 1 year after the date of the accident that caused the injury unless written notice of injury as provided in subsection (4) has been given to the insurer within 1 year after the accident or unless the insurer has previously made a payment of personal protection insurance benefits for the injury." Whether National received notice from Executive is not currently before this Court; rather, the trial court reopened discovery after the motion hearing so Executive and National could investigate any contractual dispute. Thus, assuming arguendo that National did not receive proper notice of plaintiff's claim within one year of the accident, the statutory limitations period would apply and National would not be responsible for paying plaintiff's PIP benefits directly. MCL 500.3145(1).

Under MCL 500.3114(4), the next insurer in order of priority would be USAA as the insurer of the operator of the Dodge Journey, Johnson. MCL 500.3114(4)(b). The trial court, however, granted summary disposition in favor of USAA, reasoning that although USAA was in the order of priority, it never should have paid any of plaintiff's PIP benefits because it was not first in priority. As USAA noted in its brief on appeal and at oral argument, there is no appeal of the order granting it summary disposition.

Under the version of MCL 500.3172(3) in effect at the time of the accident, if there is a priority dispute, the claim shall be assigned by the MAIPF to an insurer, "and the insurer shall immediately provide personal protection insurance benefits to the claimant or claimants entitled to benefits." MCL 500.3172(3)(b). The MAIPF is then required to file suit for the circuit court to declare the rights and duties of any interested party, and after the court makes this determination, it shall order reimbursement to the MAIPF from the obligated insurer. MCL 500.3172(3)(c)-(f). However, based on plaintiff's lack of due diligence, she is not entitled to recover any benefits, and moreover, the claim against National is barred by the statute of limitations. Therefore, the trial court erred in determining that Farmers, as the assigned servicing insurer from the MAIPF, was responsible for paying plaintiff's PIP benefits, and then entitled to reimbursement for any payment made from National.

V. CONCLUSION

In Docket No. 361266, we reverse the April 14, 2022 trial court order to the extent that it denies Executive's motion for summary disposition, and remand for entry of an order granting Executive summary disposition under MCR 2.116(C)(8). In Docket No. 361956, we reverse the same order to the extent that it denies National's motion for summary disposition, and declares

National liable for reimbursement of no-fault benefits, and remand for entry of an order granting National summary disposition.  We do not retain jurisdiction.

/s/ Thomas C. Cameron
/s/ Kathleen Jansen
/s/ Stephen L. Borrello